IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

**EVANGELINA HUPPERT**
14900 Gladiolus Ct.
Woodbridge, VA 22193

*Plaintiff*,
v.                                            Civil Action No. _____

**OFFICER J ACEVEDO-ORTIZ,**
*In his personal capacity,*
*Badge No. 2811,*

    Serve: Prince William County, Office of the County Attorney
    Attn: Jeffrey R. B. Notz, Senior Assistant County Attorney
    1 County Complex Ct., Ste. 240
    Prince William, VA 22192

    Serve: PRINCE WILLIAM COUTY
    POLICE DEPARTMENT
    5036 Davis Ford Rd.
    Woodbridge, VA 22192

**OFFICER J. R. WALSH-STEINES,**
*In his personal capacity,*
*Badge No. 2716,*

Serve: Prince William County, Office of the County Attorney
Attn: Jeffrey R. B. Notz, Senior Assistant County Attorney
    1 County Complex Ct., Ste. 240
    Prince William, VA 22192

    Serve: Prince William County Police Department
    5036 Davis Ford Rd.
    Woodbridge, VA 22192

**PRINCE WILLIAM COUNTY**
**POLICE DEPARTMENT,**

    Serve: Prince William County, Office of the County Attorney
    Attn: Jeffrey R. B. Notz, Senior Assistant County Attorney
    1 County Complex Ct., Ste. 240
    Prince William, VA 22192

    Serve: Prince William County Police Department
    5036 Davis Ford Rd.

Woodbridge, VA 22192

**PRINCE WILLIAM COUNTY**
**BOARD OF SUPERVISORS,**

Serve: Prince William County, Office of the County Attorney
Attn:  Chair-At Large & Jeffrey R. B. Notz, Senior Assistant County Attorney
1 County Complex Ct., Ste. 240
Prince William, VA 22192

**DEPARTMENT OF FORENSIC**
**SCIENCE**,

Serve:  700 North Fifth Street
Richmond, VA 23219

*Defendants.*

## COMPLAINT

COMES NOW, Plaintiff, Evangelina Huppert, by and through her counsel of record and hereby files this Complaint against Defendants, individually and jointly, in relation to the claims and damages based upon the following:

## INTRODUCTION

1. This is an action brought pursuant to, *inter alia*, 42 U.S.C § 1983, alleging violation of the Fourth Amendment to the Constitution of the United States of America, and attendant state law claims.

2. This action arises from the behavior of Prince William police officers on March 18, 2021.  Officers J. Acevedo-Ortiz and J.R. Walsh-Steines, while on duty and in uniform, arrested and detained the Defendant while she was experiencing a medical emergency. The offiders did so ostensibly because they assumed Plaintiff was driving while intoxicated, even though breathalyzer tests and laboratory blood tests were negative for any illegal substances. Officer J. Acevedo-Ortiz and other Defendants used excessive force against the Plaintiff, causing physical and mental injury

and harm, and illegally detained her during a medical emergency and while also failing to obtain medical assistance for the Plaintiff – resulting in further medical distress and related injuries and damages.

3. As a result of the reckless and excessive force and the negligent acts of Defendants, Plaintiff suffered damages, including but not limited to, loss of income, physical harm, emotional harm, mental suffering and aguish, loss of enjoyment of life, medical complications, physical injury, and medical expenses incurred for treatment of physical injuries sustained and exacerbated, which were a direct and proximate consequence of Defendants' reckless behavior and failure to follow standard operating procedures and reasonable duties of care resulting in additional violations of Plaintiff's constitutional rights as well as defamation claims for pursuing false intoxication charges and associated costs and fees to defend and expunge those records.

4. As a result of Defendants' improper actions and excessive force, Plaintiff seeks compensatory and punitive damages from Defendants because of their violations under the Unites States Constitution and the Commonwealth of Virginia laws in connection with their improper restraint, arrest, use of excessive forces, false imprisonment, and false charges in connection with the Plaintiff occurring on March 18, 2021, and requests that the Court award any other compensation fit for the damages Plaintiff suffered.

## **VENUE AND JURISDICTION**

5. This Court has subject matter jurisdiction over the Plaintiff's Federal Constitutional claims pursuant to 28 U.S.C § 1331. This Court has subject matter jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C § 1367.

6. Venue is proper in the Alexandria Division of the Federal District Court for Eastern District of Virginia pursuant to 28 U.S.C. §§ 127, 1391 and Local Rule 3, as a substantial part of the events giving rise to the claims herein which occurred in Prince William County and is within the

Alexandria Division of the United States District Courts for the Eastern District of Virginia.

## PARTIES

7. Plaintiff Evangelina Huppert is a citizen of the United States and a resident of Virginia.

8. Defendant Officer J. Acevedo-Ortiz ("Defendant") is a citizen of the United States, a resident of Virginia, and at all times relevant hereto, was employed, uniformed, and on duty with the Prince William County Police Department and was acting under color of law.

9. Defendant Officer J.R. Walsh-Steines ("Defendant") is a citizen of the United States, a resident of Virginia, and at all times relevant hereto, was employed, uniformed, and on duty with the Prince William County Police Department and was acting under color of law.

10. Prince William County Police Department is a local government entity operating within this Court's jurisdiction.

11. Prince William County Board of Supervisors is a local government entity operating within this Court's jurisdiction.

12. Department of Forensic Science is a state government entity operating within this Court's jurisdiction.

## STATEMENT OF FACTS

13. On March 18, 2021, Plaintiff reported to work as scheduled, but felt unwell and requested to go home. Her supervisor observed that Plaintiff looked unwell and approved her request to return home for the day.

14. On her drive home at approximately 2:00 p.m., Plaintiff experienced a medical emergency while heading southbound in the left turn lane on Jefferson Davis Highway before Occoquan Road.

15. Plaintiff's emergency medical situation caused her to become confused while

driving, resulting in a minor rear-end fender bender.

16. Officers J. Acevedo-Ortiz and J.R. Walsh-Steines responded to the accident at approximately 2:10 pm on March 18, 2021, while on duty and in uniform, concluded that Plaintiff was under the influence of illegal substances, despite the Plaintiff taking two negative breathalyzers at the scene of the accident.

17. Plaintiff reported to the responding officers that she was not feeling well. Despite this, the officers proceeded to arrest, handcuff, and place Plaintiff in the back of their patrol car and detained her in order to obtain a blood test to further analyze her level of suspected intoxication.

18. During this process, Officer J. Acevedo-Ortiz handcuffed the Plaintiff, told her she was under the influence of drugs and would spend the night in jail and placed her in the back of his patrol car.

19. Instead of calling emergency responders to the scene of the car accident to evaluate Plaintiff when she was presenting distressing activity and a confused mental state with physical symptoms, the officers arrested, searched, and detained her. Even if Plaintiff had been intoxicated, it would have been to an extreme enough point that medical evaluation and treatment would have also been appropriate to avoid any complications or overdose situation,  – and pursuant to the police code of conduct of what a reasonable officer would do in this situation.

20. Pursuant to the Prince William County Police Department Manual of General Orders, Effective August 6, 2021, general guidelines for officers include the following standards:

> V. Duty to Intervene – Any officer present and observing another officer, or any law enforcement official, using force that is beyond objectively reasonable under the totality of the circumstances shall, when in a position to do so safely, intervene to end and prevent the continued use of excessive force. Additionally, officers have the duty to render medical aid (see Section VI of this GO) and immediately notify an on-duty supervisor. (1.2.10 LE1). *See also Virginia Code § 19.2-83.6.*
>
> VI. Medical Aid Following Police Action – When safe and circumstances reasonably permit, medical aid, as outlined in General Order 40.04 (Medical Guidelines), should

5

be rendered following any law enforcement action in which there are complaints of, or an officer observes, injuries, sustained injuries, or impaired consciousness. Environmental circumstances may influence the timing and actions of the aid response. Appropriate medical aid may include, but is not limited to, increased observation, flushing chemical agents from the eyes, applying first aid, evaluation by paramedics, or for more serious or life-threatening incidents, immediate aid by medical professionals. Additionally, activating the Emergency Medical System, immediate medical aid consistent with training should be administered for any obvious severe injuries or unconsciousness. *See also Virginia Code § 19.2-83.6.*

21. During the improper arrest, Plaintiff was crying, her body was shaking, and she was having trouble breathing due to the stress of being falsely accused of intoxication, the physical pain of being handcuffed, and the anxiety of being place in the officer's patrol vehicle and transported to the police booking station, all while Plaintiff was experiencing a serious medical emergency.

22. While being falsely arrested, Plaintiff experienced pain from the hand cuffs and additional difficulty breathing when her hands were placed behind her back in the patrol car. Plaintiff was further scared and concerned for her safety and when she expressed this to the officers multiples times, but Plaintiff was told to "shut up".

23. Defendant officers transported Plaintiff and detained her overnight in jail without any further medical treatment or follow up and was subjected to an illegal search via a blood test with the Department of Forensic Science, as requested by Officer J.R. Walsh-Steines.

24. At the booking station, Plaintiff was forced to undergo a blood draw to confirm if she was indeed under the influence of any illegal substances. The test concluded that Plaintiff was not under the influence of any illegal substances and the results indicated she had only taken cold medicine.

25. Defendant officers again failed to take any action to obtain a medical evaluation or medical treatment or to release the innocent Plaintiff.

26. Plaintiff was eventually released from detention center and brought home by the same Prince William County police officers. When the police officers dropped Plaintiff off at her

house, Plaintiff was again observed as being confused, could not use her keys to open her door, and complaining that she felt hot and tired and sat down in the middle of her lawn. The officers still failed to call 911 or obtain any medical treatment for Plaintiff.

27. Finally, Plaintiff's roommate/neighbor arrived at Plaintiff's home and found Plaintiff lying on her lawn with the police officers observing her.

28. Plaintiff's roommate initiated the 911 call to take Plaintiff to the hospital, where she was diagnosed with several life-threatening conditions to included diabetic shock, diabetic, bruising from hand cuffs, possible stroke or heart attack.

29. Due the delay in medical care, Plaintiff experienced a significant increase and exacerbation of the medical emergency situation she had found herself in and suffered severe complications and nearly lost her life due to the delay in medical care caused by Defendants' negligence, excessive use of force, improper arrest, and false imprisonment.

30. Even after Plaintiff's blood test for illegal substances came back negative, Defendants continued to pursue the DUI charge against Plaintiff causing her further distress, anxiety, and loss of time to appear and defend herself.

31. Plaintiff had to further follow up after the wrongful DWI/DRUGS misdemeanor charge resulting in a *nolle prosequi*, which Plaintiff had to further pursue and request the charges be expunged so as to clear her records for future employment and any background checks. During this time, she was precluded from applying for employment due to the disparaging charges on her background report.

32. As a result of this incident and the extreme medical consequences due to the delay in treatment caused by Defendants, Plaintiff also lost her job since her employer was unable to accommodate her medical restrictions.

33. As a direct and proximate cause of the Defendant's actions, the Plaintiff suffered the

following:

    a.       Bodily injury from effects of the arrest with excessive force without probable cause;

    b.       Injury to her clearly established constitutional rights;

    c.       Past, present, and future physical pain and suffering from the effects of delayed medical attention for her medical emergency condition;

    d.       Past, present, and future mental anguish, physical injuries, and damages resulting from the initial incident;

    e.       Defamation from being wrongly accused of DWI/Drug misdemeanor; and,

    f.       Loss of job and wages due to delay in medical treatment.

## CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF THE FOURTH AMENDMENT
### UNREASONABLE SEARCH & SEIZURE – EXCESSIVE FORCE 42 U.S.C. § 1983
### Declaratory Relief, and Compensatory
### and Punitive Damages Against All Defendants

34.    Plaintiff repeats and re-alleges and incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

35.    Defendants' unjustified and improper seizure, restraint, and use of excessive force, including, but not limited to applying force with their hands, placing Plaintiff in handcuffs, detaining her in the police vehicle, booking her into jail, locking her in a jail cell, forcing her to submit to a blood draw, forcing her to submit to a blood test, forcing her to return to her home in a police vehicle, was excessive and unreasonable to a reasonable person under such circumstances.

36.    A reasonable person would have concluded that Plaintiff was in the midst of suffering a significant medical emergency and not intoxicated, when the Plaintiff reported to Defendants that was feeling physically unwell; that she does not drink; when she tested negative for any alcohol during Defendants' breathalyzer tests; and when Plaintiff was negative for any illegal substances confirmed by blood tests. Defendants' unreasonable conduct, initiation, and progression

8

of the unlawful search and seizure and use of excessive force against Plaintiff during a medical emergency and was in not in accordance with local Police General Orders.

37. For these reasons, Defendants lacked any probable cause or a reasonably articulable suspicion to detain the Plaintiff and deny her medical care following the accident, during her arrest, and upon her detention.

38. Defendants unjustified use of force against Plaintiff deprived Plaintiff of her right to be secure in her person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment of the United State Constitution and applied to all state actor Defendants by the Fourteenth Amendment.

39. Defendants' use of force was both excessive and unreasonable, since Plaintiff was in a weakened state while experiencing a medical emergency, Plaintiff told the officers she was not feeling well, Plaintiff was cooperating with the Officers, Plaintiff expressed to Defendants that she was experiencing pain, suffering, and difficulty breathing while in their custody and physically restrained, Plaintiff posed no immediate threat of death or serious bodily injury to the officers or other at the time of application of excessive force.

40. Defendant Officers unlawful use of excessive force lacked any probable cause to conduct any search and seizure after Plaintiff took two breathalyzers which were negative.

41. Defendant Officers unlawful use of excessive force lacked any probable cause to conduct any search and seizure after Plaintiff expressed that she was not feeling well and was trying to go home.

42. Defendant officers unlawful use of excessive force lacked any probable cause to conduct any search and seizure after Plaintiff's illegal blood draw and subsequent blood test was negative for any illegal substances.

43. Defendants failed to obtain any medical treatment for the Plaintiff.

9

44. Despite this, Defendant seized Plaintiff and placed her in full custodial arrest using words, force, placed her in tight handcuffs, and escorted her to the back of the patrol vehicle; all of which were objectively unreasonable actions taken by Defendant while Plaintiff was experiencing a medical emergency.

45. To the extent that Defendants did not personally and actively participate in any particular discrete use of force, the use of force under these circumstances violated Plaintiff's clearly established constitutional rights to be free from unreasonable seizures and searches, the Defendant knew that the use of the force would and did violate Plaintiff's rights, and as such Defendants failed to intervene and stop it, causing Plaintiff's medical emergency to be exacerbated by Defendants' failure to obtain medical treatment or care for Plaintiff.

46. Defendants' unreasonable actions caused Plaintiff to experience extreme pain and suffering, bodily injury from effects of the arrest with excessive force without probable cause; injury to her clearly established constitutional rights; past, present, and future physical pain and suffering from the effects of delayed medical attention for her medical emergency condition; past, present, and future mental anguish, physical injuries, defamation, and damages resulting from the initial incident; and, loss of job and wages due to delay in medical treatment.

47. As a direct and legal result of these actions and omissions Defendants, jointly and severally, deprived Plaintiff of her liberty and live without a warrant or justification.

48. As a result of their conduct, Defendants are jointly and severally liable for Plaintiff's injuries since they were integral in participating in the excessive use of force and failure to intervene to prevent such violations and failed to seek proper medical evaluation and treatment for the Plaintiff who was experiencing a medical emergency.

49. Defendants' actions were committed knowingly, willfully, intentionally, maliciously, and in a manner demonstrating a callous indifference to Plaintiff's protected rights,

with the intent to harm, injury, vex, harass, and oppress Plaintiff with a conscious disregard of Plaintiff's health, safety, and constitutional rights. Therefore, Plaintiff seeks punitive and exemplary damages from all Defendants for their objectively unreasonable searches and seizures and violations of Plaintiff's constitutional rights.

50. Defendant Officers were acting under the color of law and as employes of the Prince William County Police Department, inclusively and integrally participated in or failed to intervene in the application and use of excessive force and improper search and seizure of Plaintiff following a minor fender bender in the middle of a Thursday afternoon.

51. Plaintiff is entitled to compensatory damages, costs, and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988, jointly and severally against the Defendants for their violation of Plaintiff's clearly established Fourth Amendment right to be free of unreasonable searches and seizures.

### COUNT II – COMMON LAW ASSAULT
**Compensatory and Punitive Damages Against all appropriate Defendants**

52. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs of the Complaint by reference or incorporation as if fully set forth herein.

53. This is a claim for common law assault against the Defendants, jointly and severally.

54. The Defendants knowingly, willfully, and wantonly, intentionally, directly and/or by being present and explicitly encouraging such behavior, assaulted Plaintiff, by subjecting her to an unreasonable search, seizure, and arrest without probable cause, which resulted in physical, mental, and emotional harm to the Plaintiff.

55. Defendants also intentionally failed to recognize and respond to the Plaintiff's obvious physical distress and dismissing her complaints of not feeling well and being in pain and unable to breath.

56. Defendants knew that Plaintiff would be intimidated and unable to leave the scene

of the accident upon her free will after she was placed into painful handcuffs and retrained to the back of the officer's cars and eventually transported to the jail and kept overnight against her will.

57. Defendant grabbed Plaintiff and placed handcuffs on her too tightly, all the while refusing to acknowledge the negative breathalyzer results and failing to obtain medical care when Defendant ignored Plaintiff's disoriented state and trouble physically breathing in the back of the patrol vehicle following the arrest.

58. Instead of calling emergency responders to the scene of the car accident to evaluate Plaintiff when she was presenting distressing enough activity and symptoms that she was presenting a danger to herself and the public, the Defendant arrested her. Even if she had been intoxicated, it appears that it would have been to a point that medical evaluation and treatment would have also been appropriate to avoid any complications or overdose situation.

59. At all times, Defendants intended to create apprehension of harmful contact by intimidation and retaliatory actions to include the unreasonable search, seizure, and unlawful detainer. And once Plaintiff was physically restrained, incarcerated, and forced to go through with further search of blood testing without any further probable cause while at the same time ignoring her medical emergency and needs thereby exacerbating the eventual stroke/heart attack episode Plaintiff was later diagnosed Defendants actions intended to cause Plaintiff apprehension that she was under arrest and not allowed to leave of her own free will while she was in the midst of a medical emergency.

60. The following day, Plaintiff would be diagnosed with several life-threatening conditions to include diabetic shock, bruising from the hand cuffs, and possible stroke or heart attack.

61. Defendants' intentional conduct to cause Plaintiff apprehension of harmful contact caused Plaintiff mental, physical, and emotional harm and damages.

62. Defendants lacked any legal justification or excuse for their conduct. Under these circumstances, and Defendants are not entitled to sovereign immunity as an assault is an intentional tort, the doctrine of sovereign immunity does not apply.

63. Defendants' actions were the legal and proximate cause of Plaintiff's damages as complained of herein and thus Plaintiff is entitled to compensatory damages for common-law assault.

64. Further, these actions were taken under circumstances that amount to *at least* a willful and wanton disregard for Plaintiff's rights, and thus punitive damages for common-law assault are warranted.

## COUNT III – Common Law Battery
### Compensatory and Punitive Damages Against all Defendants

65. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs of the Complaint by reference or incorporation as if fully set forth herein.

66. This is a common law claim of battery against the Defendants, jointly and severally.

67. Defendants directly and intentionally touched Plaintiff by, *inter alia*, grabbing her and placing her in handcuffs.

68. The Defendant's touching of Plaintiff was harmful, excessive, and offensive to a reasonable person and was conducted without lawful justification or excuse.

69. At no time during these batteries was Plaintiff combative or presenting such a threat to the Defendant such as to warrant such harmful and offensive touching.

70. As a direct and proximate cause of the Defendant's battery of her, Plaintiff suffered damages as described herein, and therefore, the Defendant is liable to Plaintiff for compensatory damages and for the common law tort of battery.

71. Further, these actions were taken under circumstances that amount to *at least* a willful and wanton disregard for Plaintiff's rights, and thus punitive damages for common-law tort

of battery are warranted.

### COUNT IV – Common Law False Imprisonment.
**Compensatory and Punitive Damages Against all Defendants**

72. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs of the Complaint by reference or incorporation as if fully set forth herein.

73. This is a claim for common law false imprisonment against Defendants, jointly and severally.

74. Defendants seized and detained the Plaintiff without legal justification or excuse, and/or failed to release the Plaintiff after it became apparent that they lacked probable cause or a reasonable articulable suspicion sufficient to provide legal justification or excuse for such continued seizure, which amounted to full custodial arrest.

75. Prior to the arrest, the Plaintiff was subjected to two breathalyzer tests, both of which failed to produce a positive result for intoxication.

76. At the time of this continuing detention, Defendants knew or should have known that they neither had a reasonable articulable suspicion or probable cause to believe that the Plaintiff had committed any crime or posed any danger to the Defendants or any other person.

77. Despite this fact, the Defendant imposed by force this unlawful restraint upon the Plaintiff's freedom of movement when the officers placed her in hand cuffs, and she was escorted to the police vehicle for transportation to the booking and detention center.

78. At all relevant times, Defendants acted with the intention to contain and confine the Plaintiff within fixed boundaries, and their conduct directly and indirectly resulted in such confinement of the Plaintiff.

79. At no time did the Plaintiff feel free to leave nor did Defendants inform Plaintiff that she was free to leave, and no reasonable person under the same circumstances would have felt free to leave.

80. By intentionally restricting Plaintiff's freedom of movement, Defendants demonstrated that they acted intentionally, willfully, maliciously, and recklessly.

81. As a direct and proximate cause of the Defendant's actions and intent to restrict and physically confine the Plaintiff, the Plaintiff suffered damages as described herein, and therefore, the Defendant is liable to the Plaintiff for compensatory damages for the common-law tort of false imprisonment.

82. Further, these actions were taken under circumstances that amount to *at least* a willful and wanton disregard for the Plaintiff's rights, and thus punitive damages for common-law tort of false imprisonment are warranted.

## **COUNT V: DEFAMATION**

83. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs of the Complaint by reference or incorporation as if fully set forth herein.

84. This is a claim for defamation against Defendants, jointly and severally.

85. Following Plaintiff's false arrest and negative breathalyzer tests and negative blood tests, Defendants continued to pursue misdemeanor DWI/Drug charges which were published on the Prince William General District Court Website.

86. Defendants' actions causing continued publishing and pursuing false charges against the Plaintiff without any evidence to support such charges was negligent, in that Defendants failed to exercise any reasonable duty of care to assure that false charges were not brought against the Plaintiff has she tested negative for any illegal intoxicating substances.

87. Defendants were negligent in publishing the false charges and pursing them, causing Plaintiff to be deterred from applying for any intermittent work because she was concerned the charges would be included in any required background check.

88. Plaintiff sustained damages to include anxiety, stress, loss of income, loss of

reputation, and expense in defending the false misdemeanor charge and getting it expunged from her records.

89. Damages for Plaintiff are presumed since Defendants' action arise to defamation per se. Further, these actions were taken under circumstances that amount to *at least* a willful and wanton disregard for the Plaintiff's rights, and thus compensatory and punitive damages for defamation are warranted.

## PRAYER FOR RELIEF

**WHEREFORE**, the above premises considered, Plaintiff respectfully prays that this Honorable Court:

(1) Declare that the Defendants' actions violated Plaintiff's clearly established Fourth Amendment Rights as complained of in herein.

(2) Declare that the Defendants' actions amount to common law violations of assault, battery, false imprisonment, and defamation as complained of herein.

(3) Enter judgement against the Defendants jointly and severally and in favor of Plaintiff for compensatory damages in such amounts as a jury may award for the violations as complained herein.

(4) Enter judgment against the Defendants jointly and severally and in favor of Plaintiff for punitive damages in such amounts as a jury may determine for the violations as complained of herein.

(5) Plaintiff's reasonable costs, expenses, and attorneys' fees as provide by, *inter alia* 42 U.S.C. § 1988 and its attendant case law.

(6) Pre- and post-judgment interest, and

(7) Any such further relief as this Court deems warranted.

PLAINTIFF REQUESTS A TRIAL BY JURY IN THIS MATTER.

Respectfully submitted, *by Plaintiff Evangelina Huppert,*

_____/S/_____
Tara B. Keller, Esq., VA Bar 91986
Consumer Litigation Associates, P.C.
6 East Eager St.
Baltimore, MD 21202
Tel: 443-955-6652
tara@clalegal.com

ATTORNEY FOR PLAINTIFF

17